Good morning, Your Honors. Susan Alexander on behalf of the Pension Trust Fund for Operating Engineers. The District Court erroneously dismissed this case. The Pension Fund has plausibly alleged that defendants misled investors to believe that Yahoo! continued to have an economic interest in Alipay long after it didn't. Defendant statements leading up to the class period are crucial in understanding this case because the statements stayed the same as circumstances dramatically changed. And I would like to, there are a lot of statements, but I'd like to briefly highlight six, if I may. So the class period is from April 19th of 2011 to July 29th of 2011. But Yahoo!'s investment in the Alibaba Group goes back to October of 2005. So the first statement is in April 22nd of 2008. Yahoo! is reporting on its first quarter 2008 results. It speaks about the, there's, speaks about the value of the investment in the Alibaba Group based on public market quotes and then adds, those results do not include the estimates of the value of Alibaba Group's other privately held businesses such as Taobao, Alipay, and China Yahoo!, which we believe provide significant additional value. Again, second statement, October 21st of 2008. I'm sorry, just so I understand, are you relying on any of these as false or misleading or are they correct and then needed to be updated or corrected? What's your theory? Sure. So these statements are context for the class period statements and they explain why there essentially was a mantra that they repeated each time. And they're context for the class period statements, which make the class period statements affirmatively misleading. And two of the statements that I was going to address, which are pre-class period statements, the January 25th and February 16th statements, raised a duty to correct because, excuse me, defendants have a duty. This is pre-class period, so you're not relying on these as being false. Two of them, well, two raised a duty to correct. And so as soon as they, so they raised a duty to correct. And so from day one of the class period, there was a duty to correct their prior statements, which they, excuse me. But these statements, you're not relying on these to be false. These are just background statements. Background statements which then sort of set the bar for what happens afterwards. Right? Are you claiming that these were false? I'm sorry. I feel like they're context for the affirmatively false statements in the class period. I understand. That's what you're saying. Are you claiming that they're false? Are you making a claim that they're false? Two of them were false. And as soon as defendants knew they were false, they had a duty to correct them. They knew they were false at the time they made them. A duty to correct. No. Not false when made. We are not alleging they were false. Well, there's a fact dispute as to whether they were false when made, which is why we pled the case conservatively. I'm asking what your case is. Are you making, is your case based on claiming that any of these statements were false or known to be false at the time made? No. Ms. Alexander, you have very limited time and you're focusing on the pre-statements. I don't want to tell you how to use your time. Sure. But I would probably get to the statements. Let me ask you, how does Brody, how is this case not like Brody? The reason that this is different than Brody is because Brody makes a clear distinction between what is an incomplete statement and what is a misleading statement. And the class period statement on April 19th repeated the same mantra that these defendants had been repeating for literally years. When they talked about the Alibaba group, they said this doesn't include the value of the privately held investments such as Taobao and Alipay, which we believe add significant value. So when they said on April 19th, 2011, these results do not include the estimates of the value of Alibaba's privately held businesses, the market would reasonably understand from that that that was the same statement they'd been making for years and it included Alipay. In fact, 100 percent of Yahoo's interest through the Alibaba group in Alipay had been gone since August of 2010. And as of January 27th, 2011, there was no even VIE, the Variable Interest Entity Agreement, so no control even possibly existed. They had – Yahoo had no economic interest whatsoever in Alipay. And the market – and that was completely concealed from the market. April 19th was within the class period, right? Yes. That's the first day of the class period, yes. So if I understand your point is that when they on that date said includes the privately held assets, people would understand that that phrase, privately held assets, means – includes Alipay, even though they didn't say Alipay. Exactly. It is different than Brody because in Brody there was no – nothing said that would mislead the market, and it is more like Berzon where this Court held that once the defendants choose to speak about the privately held assets, choose to tout that – Doesn't Berzon say – go into specificity and say – I mean, it makes it sound like perhaps if the statements here had specifically acknowledged or recognized Alipay, then that may have been a problem, but because they didn't, then they may be all right. All that happened in Berzon was the defendants filed a backlog report. Here they had been making the same statement, privately held businesses, the value – that adds significant value for literally years, since 2008, and several times previously when they had said that, they specifically added that it included Alipay, which provides significant additional value. It is true that they didn't name Alipay by April – on April 19th, but by then the market understood. A reasonable investor would have known exactly what they were talking about because they had said it so many times. They had said the privately held businesses such as Alipay and Taobao, which were always held to be – always represented as the gems of this investment. Is Berzon your best authority for that? Is there any other case? Berzon and Brody. Actually, Brody is really strong for us because Brody significantly distinguishes between a statement that is only incomplete as opposed to one that is affirmatively misleading. And here it was affirmatively – that was affirmatively misleading when they spoke about Alipay – spoke about the privately held businesses, which the market had been conditioned to understand would include Alipay. What did they know on April 19th? What do you claim they knew? As of April 19th, there's no dispute. Everyone admits that they knew. But what we claim they knew is as of June 2009, they knew that 70 percent had been transferred away. And as of August 2010, 100 percent of the assets were gone. And they knew that because Yang was on the Alibaba board. In fact, CEO Bartz basically said, we're on the Alibaba group board. I mean, Yang was on the board. They made – the board approved the June 2009 transfer, and it was in the minutes of the July board meeting. Yahoo had a dedicated compliance officer at the Alibaba group. The shareholder agreement, the October 24, 2005 shareholder agreement required – had several provisions requiring a majority of the Alibaba group to approve any transaction, requiring the Alibaba group to send Yahoo monthly management reports, requiring the CEO Ma, who was the CEO of the Alibaba group, says that they knew as of the June 2009 transfer. The board – he also said the board was 100 percent aware of the decision to terminate the VIE agreements. He says he personally told Yang the day after he terminated the VIE agreements when asked on TV, so is Yahoo just lying? He said, what do you think? Shortly after the end of the class period, CEO Bartz was terminated from the board. And Yahoo resigned from the board. Even defendants admit that as of March 31st, in their self-serving press release, which is contradicted by the allegations of the complaint, but even their press release admits that by March 31st, they knew. So as of April 19th, there's no question that they knew, and this is where the prior statements become important. Because at that point, even if they didn't mention Alipay on April 19th, they had mentioned specifically Alipay both on January 25th and on February 16th. They had – on January 25th, they said, these figures do not include the estimates of the value of the Alibaba group's privately held businesses, most notably Taobao and Alipay. On January – You're throwing out dates, but you're not adding years to them. You know, the way the year works is sometimes January comes before April, sometimes it comes after April, depending on the year. I'm sorry. I must be – You're throwing out – I know you're – I must be mumbling. I don't mean to be so – so let me be – You haven't given me a year. You said something about 2009 and 2010. Okay. But you just give dates. As of – And if you don't give me a year, it's hard to put them in order. I apologize. As of August of 2010, they know that 100 percent of the assets are gone. We're talking about April 19th. April 19th of 2011. So August the year before, they know that 100 percent of the shares – Alibaba group's shares and Alipay are gone. So when does the class period start? April 19th. We pled this very conservatively. We waited until they spoke on April 19th, after both 100 percent of the shares had been transferred and the VIE agreement had been terminated. Okay. So what's your position they should have said on April 19th, the very first day that you have an actionable statement? Right. Everything that happens before that, by definition, is not actionable, right? On April 19th, they should have said, when we spoke to you back in January of 2011 and again in February 2011, talking about the fantastic value of Alipay, we were mistaken because at that point we did not have any economic interest in Alipay. That's the correction theory, right? And when they spoke about the Alibaba group – Ms. Alexander, you don't have to fill every void. If you sort of pretend to listen to what I ask, maybe we'll have a conversation. I'm sorry? Do you remember what I asked? Yes. You asked what they should have said. And I think they should have corrected those two earlier statements. I also think that they should have – No, but do you remember the last thing I asked you? I thought you asked me what they should have said on April – I know, because you weren't listening. I'm sorry? You weren't listening. I said, this is your correction theory, right? Yes. Now, is – so the idea is, first thing in the period on April 19th is they needed to have corrected stuff they said earlier. This is a period that our Court has never adopted. But it is consistent with – I'm sorry. Is that a fact? Yes. You are absolutely right. The Ninth Circuit has – Okay. So – so – Has the Supreme Court adopted it? I would argue they have not specifically adopted, but I believe it is consistent with – It may be consistent, but it's not the law of this circuit. Well, I think it's – Well, I don't think you can take it for granted we're going to follow the sentence of the Second Circuit on this point. You may, but – we may, but I wouldn't take it for granted. But do you also have a misstatement theory as of the 19th? All the things you said they needed to correct and all that, that's a correction theory, which, as we now agree, is not the law of the circuit. See what happens when you listen? So do you also have a misstatement theory? Yes. Okay. Talk to me about that at some point, but – but we should spend a little time talking about why we should adopt this newfangled correction theory that other circuits have adopted. Okay. Some other circuits, not all. Do you have a preference as to which I do first? No, no. Okay. But I just didn't want to go on throwing dates at me. Okay. And ask – Sure. Okay. The statement on the first day of the class period, which is the April 19, 2011 statement, was affirmatively misleading because it continued to tell investors that Yahoo! had an investment in the Alibaba Group, which was valued based on the public market quotes, and that valuation did not include estimates. It didn't say Alibaba, right? Didn't say Ali – didn't say Alipay, which is the – Didn't say Alipay. Very confusing. So how can it be misleading if it doesn't say Alipay? It's one thing to say, look, they said Alipay in the past. They needed to correct it. I understand that theory, and we can talk about that. Sure. But how is it – I'm trying to understand your – So our theory is that because they had – it had become essentially a mantra to say the publicly held businesses, including Taobao and Alipay, they said it over and over and over again. And because they had said it so many times, our theory is that this time they said it in April, the market would have inferred, the market would have reasonably understood that it had the same meaning that it had had over a period of years. And what's your best authority for that? The best authority is – is Bersan and Brody in this Court and Matrix in the Supreme Court, which say that defendants have a duty to make their statements not misleading. So when they speak – and this is where Bersan is especially helpful – they chose to speak about the privately held businesses, but didn't mention that an asset, a $5 to $6 billion asset, was gone, and all they had was $46 million. The asset was gone. They'd been touting it for years as their play in China. This is how we play in China. This is our move. And we're not holding this for the short run. We're holding this for the long run. This is going to be important at the IPO. They were right. That asset today is worth $60 billion. At the time of the IPO in September, it was worth almost $38 billion. They got $46 million for that asset, and they never told their investors. They concealed it. They just talked about privately held businesses the way they always had. And it was misleading. I'm out of time. I had hoped to reserve a minute for rebuttal, but I – unless the Court has further questions, I will leave. We'll hear from the other side. We'll probably give you a little time for rebuttal. Thank you. Why don't you hear from the other side? Good morning. Jordan F. for defendants. The law in this area is very straightforward. Did Yahoo make affirmatively – did it affirmatively intimate something materially misleading about the value to Yahoo of Alipay? Put in even more simple terms, did Yahoo tout Alipay's value? Did it tout Alipay's value? Did what? Tout. T-O-U-T. Tout. Tout. That's the language from Burson, other cases plaintiffs have used it to. T-O-U-T. Tout. Well, when they said this does not include the private assets, which they said on April 19th. Yes. That's a touting, isn't it? No. It's not touting. Why not? Why not? Well, and so what I'd like to do is talk about the actual statement. The statement that was made on April 19th, not the statements made in 2008, not in 2009. We'll get to that. Not whether Carol Bartz resigned. What this court does, what every court does, is when there's an allegation of misleading statement – Why are you doing this long windup? Excuse me? Just tell us what it is. Why this long windup? The reason – So what is it that they said on the 19th and why isn't it a tout? Let's not lose track of the question. What they said on the 19th is in a conference call when the CFO – Spit it out. What did they say? They said that the value of Yahoo! Japan and Alibaba.com were $9.9 billion, which is $7.50 per share. Those numbers do not include the value, the estimated value of Alibaba's private businesses. That's what they said. Okay. I think that's what I asked you. Yes. Okay. You haven't changed it a bit. So let me ask you the question I asked and which I heard Judge Rawlinson agree. Why isn't that a tout? Because that is a discussion of the value of Yahoo! Japan, which is not owned by Alibaba Group at all, has nothing to do with Alipay, and Alibaba.com, which does not own Alipay or have any relationship with Alipay. Those are completely separate entities. Why are they talking about these separate entities unless they were part of the deal? They were talking about those separate entities because they have investments in those entities. Who is they? Yahoo! Yahoo! has investments in Yahoo! Japan. It owns something like 35 percent of Yahoo! Japan, and it had an indirect stake in Alibaba.com, which is not Alibaba Group and is not Alipay, and in its balance sheet it reports the fair value of its investments in those entities which are publicly traded. Alibaba Group was not publicly traded. Alipay was not publicly traded. Lots of Alibaba entities, and part of the confusion here is all the Alibabas. But Alipay was not publicly traded. Taobao wasn't publicly traded. Many private entities. You're saying a lot of stuff that's not answering the question. Do you remember the question? Yes, I do remember the question. Repeat the question just so we know we're on the same page. Why was this not touting? Yes. That was the question. And the answer that was. . . Just plain English. Simple. . . Because it wasn't saying anything about the value of Alipay. It wasn't including Alipay. It didn't call out Alipay. It didn't say . . . I asked you a question whether it was touting. Yes. Now, what it was touting is the next subject we're going to discuss. But when you say, look, we are buying this thing, and in addition to it, there's this treasure chest. Now, we don't know what's inside the treasure chest, but, you know, why is that touting? They didn't say treasure chest. Well, I understand. Let's. . . I'm changing the facts slightly, saying we just drug it up from the ocean, and here is this chest. We're not saying what's in it. Why is that touting? Why on God's earth would they say, and this does not include these assets, unless it is to imply to investors, this is something pretty good? Why are you including that? But you can bet that's something pretty good inside. Why isn't that touting? It's not touting because they were reporting to investors and clarifying to investors that the publicly reported numbers in that very discussion were just publicly reported numbers. They didn't include the value of anything. Right. And this wasn't saying this is something that would make those numbers less. This wasn't that kind of disclosure. By the way, let me tell you what's in there is toxic waste that is going to diminish the value. What it was saying is there is this additional value there. I'm not. . . You know, this is the public figures, and I'm adding this other thing because you can imagine it will only raise the value of the deal, right? Is there any other reason for them to mention it other than to suggest there was additional value there? Well, yes, there are other reasons. It's to clarify the meaning of the numbers that had been previously reported, that had been reported earlier in that discussion. Why clarify the meaning? To make sure that investors understand that those numbers are only the public numbers. Right. And to lead them to believe what? That those numbers will get higher? To make. . . Could they possibly be lower as a result of having additional assets? Your Honor, if it's. . . I ask you a question. No, it's not. Okay. So it must be. . . It must be that they say there is this other value there. I don't know if that's not touting in your dictionary. Maybe we need to write an opinion making that clear. Why isn't that not touting when you say, look, there's additional asset? Because when I look at Burson, Burson is a case that talks about touting. And in Burson, what happened is the company reported its backlog figures, and it included within its backlog work where the government had said stop work, and it included those numbers. And when they reported a number that included stop work orders, the court found that that was touting. This case, where we report numbers not for Alibaba Group, but for Yahoo Japan and for Alibaba.com, we specifically say we're not including these other numbers. We're not including them in whatever they are. Your Honor. . . I'm sorry. You just described a set of facts, but you haven't made an argument. Yes, I mean, that Burson involves a particular set of facts. What is it about Burson that says this is not touting? What is it about when you say, look, there's this additional asset that's part of the deal. Yes. Why isn't that not touting? Yes. What could it possibly be other than touting? Your Honor, Alibaba Group's value wasn't even discussed. It was clarifying in a complex situation where a lot of Alibaba. . . Why are they talking about this at all? Because part of the issue is whether or not that statement was touting the value of Alipay. Alipay wasn't. . . Isn't that why we have juries? I mean, the question is, once we're sort of in the touting category, once we say this is touting something, the question of what a reasonable investor would have understood them to be touting, it sounds to me like the kind of thing the entire facts are, right? So, Your Honor, I have two responses to that. First of all. . . Whenever lawyers have two responses, it tells me that they don't have a good one. No, I have two good responses. I have two good responses. First of all, Alipay was not the only private entity. There was another one, Taobao, and another one, Alibaba Cloud Computing, and another one. And plaintiffs themselves are alleged. . . So what? You know, I've got a bag in here, and it has a Hope Diamond and some other stuff. At some point, you say, you know, I don't care what else there is in there. Give me a Hope Diamond. I'll take the bag. I mean, Alipay was a big, big asset. And, Your Honor. To say there were other assets is next to irrelevant. Well, Taobao was bigger. It's insulting to the intelligence. Taobao was bigger. According to plaintiffs' own complaint, it was bigger. And in addition, the idea that it had no value at that time is flat wrong, flat wrong. The complaint itself points out that by July, there was a multibillion. . . I'm sorry. We're talking about Alipay? Yes. Now we're in different territory. Now we're in trial territory. You know, once we get there, you've lost. So. . . It's on the face of the complaint. I don't think you want to go there. It's on the face of the complaint, Your Honor. The complaint itself. . . Did the district court dismiss on that basis? The district court did not dismiss on that basis. The district court dismissed finding that it was not misleading. Are you giving up on the not misleading, Your Honor? No. I've made my argument on why it's not misleading. The plaintiff's argument, which I heard again here, is that the reason it was misleading is because of all the statements in the past. Because what? An investor. . . Well, they've made two arguments. I don't know how to clarify that. When she listens to my questions, she's pretty good at answering them. I think what she said was there are two things going on. One of them is it made the statement on April 19th, and it made it in such a way that investors would have understood when they said private assets, it included hourly pay, because in the past they had said that. So when they say private assets, they, investors, the reason investors wouldn't say hourly pay, that's their misleading argument. And then there is that in the past they affirmatively said hourly pay, and therefore when in April 19th they don't correct that, when they knew that those earlier statements were wrong, under the correction theory they needed to correct. They needed to affirmatively correct. A theory we haven't yet adopted in the Seventh Circuit. And I thought you were going to tell me why this, I mean, the Ninth Circuit. I thought you were going to tell me why the Seventh Circuit was wrong to go there, but maybe not. I could talk about that, too, Your Honor. Yeah, if you want to. I don't know. Sure. Sure. Just one other thing on misleading on April 19th. What Plaintiff argues, what Plaintiff argues is that the reason the April 19th statement was misleading is because of this mantra from the past, that even though, even though Yahoo! said does not include, does not include and did not include a value, that investors would hear it as if it said, as if a bell went off and it said, even though you didn't mention Alipay and even though there are a lot of other entities, we're going to hear this as Alipay and provide significant additional value. Because in the past, going back over years from time to time, that's what you said. And there's no case, no case in the Ninth Circuit or anywhere that supports that theory. I'll switch now to the duty to correct. The duty to correct, never been adopted by the Supreme Court, never been adopted by the Ninth Circuit. I don't believe it's consistent. Seems like a good idea, doesn't it? Maybe. But the good idea has to come from Congress or from the SEC. In this area. It didn't stop there. I mean, we're talking serious circuits here. I mean, we're talking Second Circuit, which has New York in it. Yeah. We're talking, I think, First Circuit. That's Boston. Backman v. Polaroid, yes. Boston in it. Yes. We're talking Seventh Circuit. So these are the large commercial centers in the United States. Isn't Delaware in the Second Circuit, too? Delaware's in the Third Circuit. That's Third Circuit, right. Third Circuit. I don't remember whether Third Circuit was on board with that. But it seems to me that there's something to be said for following on an issue like this for having a national lobby uniform, right? And, you know, they've put the issue in play by arguing it. We can't just ignore it. Yes, that's correct. In one way or another, the Ninth Circuit is either going to have to follow these other circuits or create a circuit split. Yes. And what is the justification for not following, you know, particularly in the commercial area, following other circuits with large commercial centers? Yes. Here's the justification, Your Honor. In the interim, there have been Supreme Court decisions in which the Court has made clear that in interpreting this implied right of action, courts should not be, to use the Supreme Court's word, atextual. That's the reason. And the cases are Morrison and Janus and Stonebridge. So that's the reason why we think that following more current United States Supreme Court authority, that that should not be adopted. We also believe that under any of those circuits' views, the duty to correct would not apply here. Why not? The reason is there are only two statements that the plaintiffs have pointed to. One was January 25th. One was February 16th, both in 2011. The plaintiff's own complaint alleges that this VIE was still in effect January 25th. The only one that could even conceivably be corrected is the February 16th. The statement is puffing. Under Kutera and under intuitive surgical, it's puffing. What the statement was is we think the strategy is fantastic. We really like these guys. We're running Alibaba. That's the statement. We don't believe that even under the duty to correct cases from the other circuits, that that would apply here. Beyond that, there's a pleading issue about whether the plaintiffs ever allege when Yahoo learned. In fact, their own complaint four different times says, well, we may have learned by March 31, earlier in March 31, and there's ambiguity in an area, the Reform Act, where there's supposed to be precision and particularity. So we don't think the duty to correct should be adopted by the Ninth Circuit, but even if it were, it doesn't apply here for those reasons. Sotomayor, let's just assume, you just mentioned the March 31st date, that the defendants did have knowledge, or assuming arguendo, that they did have knowledge of the restructuring and loss of control before then. Does that, how does that knowledge alter the mix here? If they did have knowledge at the time, did have knowledge that as of the time of one of their statements, what you'd still have to look at is what is the statement. And when duty to correct is applied, it's things like we said our revenues were 4 million and there were only 3, and we just learned that. It's not applied to these kinds of puffing statements where if you, where it's a fantastic strategy. Would it increase the likelihood that the statements were misleading? Well, it's just a different element. We'd have to go to the element of it's puffing. You'd have to look at the statement. And then beyond that, whether it was reasonable, whether it was reasonable for Yahoo, I see I'm out of time. If I could just finish my sentence. Please. If it was reasonable for Yahoo to wait until it's very next SEC filing, as opposed to this idea of continuous updating, where as soon as you learn something, you have to issue something immediately. And the cases we cite from the Seventh Circuit, Higginbotham and so forth, Gallagher, all talk about a system of periodic disclosure. Well, they don't have to say on the 19th. They don't have to say this includes these other assets. You know, they could just not say anything. If your position is, you know, they need some time to correct it, they can wait until the next filing. I mean, there's something to that. But they actually go ahead and repeat the statement about other, this does not include this other value. Your Honor, they didn't repeat it the same way. That's why plaintiffs go back in time and say it's just like what they said in the past when they said significant additional value, most notably Taobao and Alipay. Those words do not appear. Those words do not appear in April 19th. They said it differently. And that's critical, because those words do not appear, and you have to look at what they actually said, not this condition. Kennedy. Let me just change the hypothetical, this fact just a little bit. Let's say they in fact had said on April 19th exactly what they had said earlier. And this includes Alipay. Let's say they said that. You agree that that would have been misleading, right? That would certainly be a tougher case for us. If they said, I'm sorry, if they said this includes Alipay, which provides significant additional value, that would be a tougher case for us. I'm sorry. Why are you changing what I said? What is the – Because if they – Is that what they said in the past? In the past they had said most – from time to time, not consistently, they had said, most notably, Alipay and Taobao, which we believe provide significant additional value. Okay. So let's say they have made exactly that statement on April 19th. What would be your position then? That would be a tougher case, Your Honor, no doubt. No kidding. Yes. You think I asked you an easier case? No, I didn't expect that. So what's your answer? My answer is – It's not a tougher case, by the way. When lawyers say that to me, it says I don't want to answer the question, which is fine if you want to, but that's what I hear when you say that. Well – So if you don't want to answer the question – I'll answer it this way. That's fine. I'm giving you a chance to answer it. If you – if you on behalf of Yahoo do not wish to give an answer, don't give an answer. I'll give an answer. Don't say something like, oh, that's a tougher case. I'll give an answer. It just wastes my time. I'll give an answer. And your client's money. So give me an answer. The answer is we would need to defend that statement on different grounds. Okay. But on this issue, you would concede, right? If we had said it that way, that's correct. Okay. Now, let's peel that back just a little bit. Let's say you had not said which provides additional value, but just said which includes Alipay. That's a tougher case, too, right? Which includes Alipay, which does not include Alipay. Well, this does not include these assets, which themselves include Alipay. Yes. Okay. So it's a does not include, which includes statement without any comment on additional value. Yes. That one would be not misleading. Even though you do not dispute that by that time they knew that Alipay was no longer in play? Or am I wrong about the fact that Alipay? We knew that there had been transactions. We didn't know exactly what those were going to result in. So the idea that it was gone when the complaint itself alleges that what Jack Ma from Alibaba Group did was said, I'm going to transfer, then we'll negotiate. So it wasn't gone and worthless. So that's not what they knew. But they knew what was going on. They knew as much as there was to know. And in your view, that is not misleading. I would view that as not misleading. And spell that out for me. Why? Because they tout an asset. They know that this asset is in some significant way impaired. Has it by that time been given away or transferred away? There's sort of negotiations going on as to how much gets to it. But the asset is essentially no longer in the picture, subject to some further negotiations. That's what they knew. And it's okay to just say it and that's not misleading in your view? It's not misleading in the context of the way they were saying it because they were commenting on Yahoo Japan and Alibaba.com. And they weren't ascribing and they were explaining that those entities' values, as reported, did not include something else. You just stated the facts, but why is that not? And they include this thing that they know is impaired as? Because they're not saying anything about the value of that thing. They're not saying that thing is worth a lot, a little, the same as before, more than before. There's nothing attached to it. It's not promoting or extolling the virtues of that in any concrete way. They're just wasting the time by this press conference by talking about irrelevant things, right? That's what companies usually do when they are out there making statements about their financial condition. Let me talk about something that makes no difference at all, right? That's what they do because they know investors like to hear chit-chat. Is that what you're telling me? That's not what I'm telling you. I think that's what I hear you saying, so I must be understanding you correctly. When they put out numbers. Look, let me just make it very specific. They mention under this revised set of facts, and there is a leap to there, but let's just assume these facts. They specifically mention Alibaba, knowing that — I'm sorry, Alipay, knowing that Alipay is subject to this entire divestiture bar transaction. And they mention it. And your position is that's okay, they don't need to disclose that there is this real serious probability that most of that value is gone. Is that your position? Depends on how they say it. That's my position. Depends on — Well, I told you how they said it. They said it exactly as they said it before, except they did not say, and this represents significant value. They just said there is this additional asset. We do not include this additional asset, which includes Alibaba. Alipay. Alipay. Yes, that's my position. Okay. I think I understand your position. Okay. Thank you. Would you like a minute? You're sort of giving up. I say if I give you a minute. All right. I would like a minute. You may have a minute. Thank you. I'd like to address two things very quickly. First, the Court asked me to — It's better to address them slowly — Okay. — than quickly. Okay? Just stay here. Go ahead. The Court asked me to address why it would be a good policy for this Court to adopt a duty to correct. And my answer is, it's simply an application of matrix, as well as this Court's law in Burson and Brody. It is simply an application of duty. What about the answer that opposing counsel gave that this is — this line of cases has been undermined by Supreme Court authority? Those — the cases, Janice Stoneridge and Morrison, have — Morrison has to do with entirely different things. The textualism argument. Right. The idea that we should not be atextual. No words would have to be added to the securities laws to adopt a duty to correct. A duty to correct directly stems from the Supreme Court's existing interpretation in matrix of the securities laws that require defendants to not be misleading when they speak. So no text would have to be added for this Court to add a duty to correct. I know you don't want people — No text will be harmed in the — No text will be harmed in this study. The other point that I wanted to make slowly, if I may, just — Slowly. There we go. The other point is about this fact question that defendants keep lofting about periodic SEC filing deadlines. To be clear, after 100 percent of the shares had been transferred, there were three SEC periodic reporting deadlines before they spoke on April 19th. Even after the VIE was fully transferred away, was fully terminated, and Yahoo! had zero interest in Alipay, a month after that, they filed their 10-K. They had plenty of opportunities to correct those statements before they spoke falsely on April 19th. Thank you, Your Honors. Okay. Thank you. The case is argued. We'll stand submitted.
judges: Kozinski, Rawlinson, Murguia